FRUGÉ, Judge.
This is a suit to recover an alleged overpayment of insurance premiums as a result of the reimbursement by Watkins & Company to its subcontractor, W. F. Sahualla & Company, under the terms of a cost plus painting contract.
After suit was filed, the defendant reconvened against the plaintiff for the sum of $2,244.88 representing an unpaid obligation owed by the plaintiff to the defendant.
Following a trial on the merits, the trial court rendered judgment in favor of the defendant, W. F. Sahualla & Company and against the plaintiff on the main demand, dismissing the plaintiff’s suit. Judgment was also rendered in favor of the defendant, plaintiff in reconvention, on its recon-ventional demand, it being agreed between the parties that the obligation made subject of the reconventional demand was due and owing by E. M. Watkins & Company to W. F. Sahualla & Company. From this judgment, the plaintiff has perfected this appeal. We affirm.
It is not disputed by either of the parties that E. M. Watkins & Company is indebted to W. F. Sahualla in the sum of $2,244.88, and that the trial court was correct in rendering judgment in favor of the defendant Sahualla on his reconventional demand.
E. M. Watkins & Company (hereinafter referred to as Watkins) is a general contractor, and was the prime contractor on the job out of which this dispute arose. Watkins asked for bids on a cost-plus basis for the industrial painting on a plant facility being constructed by Watkins in Alexandria, Louisiana. W. F. Sahualla & Company, Inc. (hereinafter referred to as Sahualla), in response to the invitation to bid presented a bid on February 2, 1968. On February 5, 1968, Watkins and Sahual-la entered into a formal contract whereby Sahualla undertook to do the painting on the plant being constructed by Watkins.
The invitation to bid contained a provision entitled “definition of cost”. The definition of cost provided for the “actual cost” to the subcontractor for all insurance and bond premiums incurred, including costs of workmen’s compensation insurance premiums. The bid submitted by Sahualla contains the following provision:
“TAXES AND INSURANCE
“1. 19% of direct field labor reimbursable
“2. 7 and %2% of premium time reimbursable.”
The formal contract entered into between Watkins and Sahualla contained the following provisions:
“SECTION 1. The subcontractor agrees to furnish all labor, equipment and everything necessary to perform all *46 work as described in Section 2 hereof for
“The Southern Synthetics Plant at Alexandria, Louisiana * * *.
“SECTION 2. The Subcontractor and Contractor agree that the equipment to be furnished and work to be done by the Subcontractor are as per invitation to bid (industrial painting) dated Jan. 11, 1968 and subcontractors’ proposal and attachments covering wages and equipment rentals dated Feb. 2, 1968. It is further agreed that any painting of other nature (not indicated in invitation) is not contemplated under this fee and rental basis.
* *f* * * * *
“SECTION 4. The Contractor agrees to pay Subcontractor for the work as follows:
“1. Subcontractor is to submit his gross on site weekly payroll for compensation by the Contractor. Once each month Subcontractor shall submit his request for a fee of two (2) per cent of the gross payroll less premium time. The Contractor may, at his option, retain fifteen (15) per cent of the Subcontractors fee until final payment.
“SECTION 5. It is understood that:
******
“6. Other costs, expenses, etc., as defined in the ‘Invitation to Bid’, shall be recoverable in the Subcontractors monthly request to the Contractor.”
Watkins contends that the provision for reimbursement of 19% of direct field labor for insurance, which was contained in the bid submitted by Sahualla was not made a part of the final contract entered into between the parties. They contend that it should not be considered a part of the working arrangement between the parties, but that the intent of the parties was that the subcontractor would be reimbursed for insurance premiums based upon the “actual cost” of the insurance premiums as determined by a final accounting. The defendant, Sahualla, on the other hand contends the language of the contract itself makes it clear that the provisions of the bid submitted by Sahualla in reference to reimbursement for insurance premiums paid was made a part of the formal contract.
We think that the defendant’s position is correct and that the trial judge properly rejected the plaintiff-appellant’s contention. In disagreeing with the plaintiff’s interpretation of the contract, the trial judge stated :
“Section 1 provides that Sahualla would furnish all labor, equipment and everything necessary to perform all the work in Section 2. In Section 2 Sahual-la agreed with Watkins that he would furnish equipment and work to be done as per invitation to bid dated January 11, 1968, and also his proposal and attachments covering wages and equipment rentals dated February 2, 1968. The item, 19% insurance premium payment, was not specifically referred to in Section 2 but the language of the contract as a whole and the practice of the parties for approximately 18 months after the work began reflects that Watkins intended to and agreed to pay insurance premiums according to the bid proposal.
For more than 18 months, the working arrangement between the parties as per this contract, was that Sahualla periodically submitted his payroll to Watkins, and Sahualla was reimbursed 19% of the direct field labor to compensate him for insurance and premiums paid on the job. There was testimony by Mr. David Miller, a construction contractor, to the effect that the percentage method of handling insurance reimbursements is a common practice or method of the industry.
It is apparently customary within the industry for a contractor, such as Sahualla, *47 to carry such insurance coverage under one contract, covering all of his operations, and the premiums are paid on the entire operation, not on each individual job. For this reason, Sahualla could not accurately determine during the process of the job exactly which part of the whole insurance payments on his operation went to cover workers and time used on the job for Watkins. Thus, we think the trial court correctly held that the parties agreed to adopt the 19% figure as a reasonable estimate of the amount of insurance premiums which would be attributable to the Watkins’ job. This figure represented the “actual cost” of insurance premiums reimbursable to the subcontractor and as between the parties, this was the actual cost of the insurance premiums.
Furthermore, since the formal contract was prepared by Watkins, any ambiguity in its provisions must be resolved against Watkins. R.C.C. Article 1958. If Watkins had desired that a different method of computation be used for determining the actual cost of insurance premiums reimbursable such a provision should have been included in the formal contract. Watkins, for example, could have demanded that a separate policy of compensation insurance be secured by the subcontractor covering only the operations on the Watkins’ job.
For these reasons, and for the additional reasons that the working arrangement between the parties for more than 18 months reflected that this interpretation represented the intention of the parties, we think judgment was properly entered rejecting the plaintiff-appellant’s attempt to show an overpayment in reimbursement of insurance premiums. Thus, the judgment of the trial court will be affirmed.
The judgment of the trial court is affirmed in all respects. All costs to be paid by the plaintiff-appellant, E. M. Watkins & Company, Inc.
Affirmed.